IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IN THE MATTER OF: | |
| JAY DOUGLAS BUCHANAN and<br>LORI ANN BUCHANAN, | CASE NO. BK19-81793-TLS |
| Debtor(s). | CHAPTER 7 |
| LUND-ROSS CONSTRUCTORS, INC.,<br>a Nebraska corporation, | ADV. NO. A20-8002-TLS |
| Plaintiff, | |
| vs. | |
| JAY D. BUCHANAN and<br>LORI A. BUCHANAN, | **ORDER** |
| Defendants. | |

This matter is before the court on the defendants' motion for summary judgment (Fil. No. 24) and resistance by the plaintiff (Fil. No. 35). Scott E. Daniel represents the defendants, and Justin D. Eichmann represents the plaintiff. Evidence and briefs were filed and, pursuant to the court's authority under Nebraska Rule of Bankruptcy Procedure 7056-1, the motion was taken under advisement without oral arguments.

For the reasons explained below, the motion is granted.

I.  Background

The debtors owned and operated an electrical business called Signature Electric, LLC, doing business as D & J Electric. Lund-Ross Constructors hired Signature/D & J as an electrical subcontractor on several building projects for which Signature/D & J engaged suppliers. Signature periodically filed pay applications with Lund-Ross for work completed and supplies purchased. As part of those pay applications, Signature provided signed lien waivers representing that all amounts owed to suppliers and subcontractors had been paid in full.

On July 26, 2019, Signature notified Lund-Ross and others that it was discontinuing business operations and would be liquidated by its primary lender, and the Buchanans would be filing bankruptcy. The company effectively dissolved as of July 27, 2019. Unpaid suppliers on the Lund-Ross projects then began filing construction liens. Signature and its owners worked out an arrangement to keep suppliers on the job by making bi-weekly payments of $50,000 to cover unpaid invoices, some of which dated back to January 2019. It made some, but not all, of these payments. Some suppliers then initiated lawsuits – which Lund-Ross was contractually obligated

to defend and indemnify – against the projects' owners to foreclose on their construction liens. In November 2019, Lund-Ross sued Signature and the Buchanans in state court for breach of contract. In June 2020, a default judgment was entered against Signature – the automatic stay protected the Buchanans – for $600,043.64.

The Buchanans filed a Chapter 7 bankruptcy petition on December 5, 2019, and Lund-Ross filed a proof of claim for the same amount as the default judgment against Signature. Lund-Ross also filed this adversary proceeding seeking to except the debt from discharge under 11 U.S.C. § 523(a)(2)(A). The Bankruptcy Code prohibits the discharge of a debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's . . . financial condition[.]" 11 U.S.C. § 523(a)(2)(A). To prevail under this section, the creditor must show, by a preponderance of the evidence, that the debtor (1) made a representation, (2) with knowledge of its falsity, (3) deliberately for the purpose of deceiving the creditor, (4) who justifiably relied on the representation, and which (5) proximately caused the creditor damage. *Hernandez v. General Mills Fed. Credit Union (In re Hernandez)*, 860 F.3d 591, 602 (8th Cir. 2017) (citing *Heide v. Juve (In re Juve)*, 761 F.3d 847, 851 (8th Cir. 2014)).

Lund-Ross's theory is that the debtors obtained periodic project payments by knowingly and falsely representing in the lien waivers that subcontractors and suppliers had been paid, and Lund-Ross relied on these representations to its detriment. The payment applications contain approximately $600,000 in supply costs that Signature failed to pay to suppliers and materialmen despite representing to Lund-Ross that such debts had been satisfied.

The debtors now move for summary judgment in their favor because (1) the debt alleged by Lund-Ross is a company debt of Signature Electric, not the Buchanans; (2) any representations were made on behalf of Signature, not the Buchanans; (3) there is no evidence any alleged misrepresentations were made with intent to deceive; (4) when applications for payment and lien waivers were transmitted to Lund-Ross, Lund-Ross representatives were aware that monies were owed to Signature Electric's suppliers and that the Lund-Ross payments would be used to pay for past-due labor and supplies; (5) with this knowledge, Lund-Ross could not have detrimentally relied on the representations in the pay applications and lien waivers; (6) none of the payments were made in reliance on lien waivers because Lund-Ross made all payments to Signature before any lien waivers were prepared, signed, sent, or received; and (7) there is no evidence that monies from Lund-Ross were retained for the Buchanans' personal benefit outside of the normal course of Signature's business.

II.     Summary judgment standard

Summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (made applicable to adversary proceedings in bankruptcy by Fed. R. Bankr. P. 7056); *see, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). On a motion for summary judgment, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party,

there is no genuine issue for trial." *Id.* (quoting *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "A factfinder can reasonably reach a conclusion if that conclusion is 'based on "sufficient probative evidence" and not on "mere speculation, conjecture, or fantasy."'" *Singleton v. Arkansas Housing Authorities Prop. & Cas. Self-Insured Fund, Inc.*, 934 F.3d 830, 835 (8th Cir. 2019) (quoting *Zayed v. Associated Bank, N.A.*, 913 F.3d 709, 714 (8th Cir. 2019)). "[T]o be sufficient, evidence must do more than merely allow the factfinder to guess between possible explanations. Factfinders cannot fill the gaps in the evidence with speculation." *Singleton*, 934 F.3d at 837 (citing *Mangrum v. Pigue*, 198 S.W.3d 496, 503 (Ark. 2004)).

### III.    Facts

The parties identified the following uncontroverted facts in their joint preliminary pretrial statement (Fil. No. 22):

1. Lund-Ross is a corporation organized and existing pursuant to the laws of the State of Nebraska, with its principle place of business located at 4601 F Street, Omaha, Nebraska 68117. Lund-Ross is a general contractor in Omaha, Nebraska.

2. Defendants/Debtors Jay D. Buchanan and Lori A. Buchanan are individuals residing in Douglas County, Nebraska.

3. The Buchanans are the sole owners of all membership interests in Signature Electric, LLC, which was organized on April 1, 2013, as a limited liability company pursuant to the laws of the State of Nebraska with 6140 Holmes Street in Omaha, Douglas County, Nebraska, as its most recent principal and designated office.

4. In or about August 2013, Signature purchased the assets of D & J Electric and thereafter did business as D & J Electric.

5. Between February 28, 2017, and November 21, 2018, Lund-Ross was hired to perform services as the general contractor/construction manager on various projects in both Douglas County, Nebraska, and Pottawattamie County, Iowa (hereinafter, collectively, the "Projects"), to include the following:

    a. The Arboretum apartments located at 8141 Farnam Drive, Omaha, Nebraska;
    b. The Duke of Omaha apartments located at 201 North 46th Street in Omaha, Nebraska;
    c. The Historic Florentine apartments located at 907 South 25th Street in Omaha, Nebraska; and
    d. Children's Square Academy located at North 6th Street and Avenue E in Council Bluffs, Iowa.

6. Between February 28, 2017, and November 21, 2018, Lund-Ross entered into agreements with Signature, doing business as D & J Electric, for Signature's performance of electrical work on the Projects as a subcontractor to Lund-Ross (hereinafter, collectively, the "Subcontracts") to include the following:

   a. A subcontract dated May 3, 2017 for the Duke;
   b. A subcontract dated April 24, 2018 for the Florentine;
   c. A subcontract dated October 4, 2018 for Children's Square; and
   d. A subcontract dated October 18, 2018 for the Arboretum.

7. Throughout Signature's work as an electrical subcontractor for Lund-Ross on the Projects, Signature engaged various suppliers (hereinafter, collectively, the "Suppliers") to provide electrical materials and equipment to Signature for use in electrical work to be completed at the Projects pursuant to the Subcontracts.

8. The Suppliers include, but are not limited to, Consolidated Electrical Distributors, Inc., d/b/a Electrical Engineering & Equipment Company (hereinafter "3E"), and Echo Group, Inc.

9. Throughout Signature's work as an electrical subcontractor for Lund-Ross on the Projects, Signature submitted pay applications to Lund-Ross requesting payment from Lund-Ross under the Subcontracts for work completed and supplies purchased by Signature in its subcontracted work on the Projects.

10. Along with the pay applications, Signature submitted signed partial lien waivers to Lund-Ross.

11. Lund-Ross paid to Signature some but not all of the payments applied for in the submitted pay applications.

12. On July 26, 2019, Signature closed its doors and ceased further business operations.

13. On July 26, 2019, Signature issued notice to Lund-Ross and others that Signature had discontinued all business operations and that Signature would be filing for bankruptcy protection (hereinafter the "Notice").

14. Since issuance of the Notice, the Suppliers, including, but not limited to, Echo and 3E, filed construction liens with respect to the Projects asserting amounts unpaid to them as a result of services or materials furnished on the Projects through subcontract with Signature.

15. Also since issuance of the Notice, the Suppliers, including, but not limited to, Echo and 3E, have brought suits against the owners of the Projects to foreclose upon their construction liens filed with respect to the Projects.

16. On October 11, 2019, a Notice of Dissolution was filed with the Nebraska Secretary of State asserting Signature's dissolution effective July 27, 2019.

17. On May 9, 2020, Lund-Ross filed a proof of claim in the Buchanans' bankruptcy proceedings in the amount of $600,043.64.

18. On June 25, 2020, Lund-Ross obtained a judgment by default in the District Court of Douglas County, Nebraska, against Signature in the amount of $600,043.64.

19. On July 6, 2020, the bankruptcy court sustained the bankruptcy trustee's omnibus objection to various claims made in the Buchanans' bankruptcy proceedings including Lund-Ross's proof of claim.

## IV. Discussion

When applying § 523(a), some courts perform a two-step analysis: first, they determine the validity of the debt under applicable law; and second, they determine whether the debt should be excepted from discharge under § 523. *Takuski v. Kurtz (In re Kurtz)*, 604 B.R. 549, 556 (Bankr. D. Neb. 2019). This analysis is most appropriately applied when the underlying debt is disputed, as it is in this case. *Id.*

To establish the validity of the debt, the plaintiff must establish that the debtor is liable on an enforceable obligation under applicable nonbankruptcy law. [*Hatfield v. Thompson (In re Thompson)*, 555 B.R. 1, 9 (B.A.P. 10th Cir. 2016)]. As articulated by the Tenth Circuit Bankruptcy Appellate Panel:

> "Debt" is defined in the Code as "liability on a claim," and "claim" is defined in turn as a "right to payment." For purposes of § 523(a)(2)(A), "debt" means liability on "an enforceable obligation." Whether a debt exists is determined by looking to applicable law, frequently state law. Section 523(a)(2)(A)'s use of the term "*any* debt" (emphasis added) indicates that "debt" as used in § 523(a)(2)(A) is not restricted to a debt established under any particular theory of recovery. To establish the validity of the debt under § 523(a)(2)(A), the claimant must establish that the debtor is liable on an enforceable obligation under applicable law, nothing more nor less.

*[Thompson]* at 8-9 (citations omitted).

*Kurtz*, 604 B.R. at 556-57.

In this case, the alleged debt is represented by Lund-Ross's Proof of Claim No. 9, which contains invoices and supplier lien claims for the projects on which Signature/D & J Electric subcontracted. Those documents all reference Signature and/or D & J; none of them name the Buchanans. This led the Chapter 7 trustee to object to the claim as a company debt, not a personal

- 5 -

debt.[1] After a hearing, the court sustained the trustee's objection, finding that the invoices were all addressed to the business at the business's address and there was no evidence the Buchanans personally guaranteed the debt.

In Nebraska,

> individual members and managers of a limited liability company are generally not liable for a debt, obligation, or liability of the company. And a court will disregard such a company's identity only where the company has been used to commit fraud, violate a legal duty, or perpetrate a dishonest or unjust act in contravention of the rights of another. The company's identity as a separate legal entity will be preserved, as a general rule, until sufficient reason to the contrary appears. And a plaintiff seeking to impose liability on an individual member or manager has the burden of proving that the company's identity should be disregarded to prevent fraud or injustice to the plaintiff.

*Thomas & Thomas Court Reporters, L.L.C. v. Switzer*, 810 N.W.2d 677, 685 (Neb. 2012) (citations omitted).

Simply put, Lund-Ross cannot establish on this record that the Buchanans are liable for the debt owed by Signature/D & J. The only way Lund-Ross could impose liability on the Buchanans for this debt would be to pierce the corporate veil, but that theory is not included in the complaint.

There is no question that Lund-Ross suffered damages resulting from Signature's closure, and it holds a default judgment against Signature for those damages. Separately, Lund-Ross is claiming here that the Buchanans, and particularly Jay Buchanan, made fraudulent misrepresentations which induced Lund-Ross to make payments to Signature. The plaintiff's focus is on Jay Buchanan's sworn statements in the lien waivers that materialmen and subcontractors had been paid in full, which Lund-Ross relied on to its detriment in releasing payments to Signature. In support of its argument, the plaintiff cites to two cases in which the owners or officers of construction companies were held personally liable for fraud because they submitted false lien waivers on projects. However, those two cases are distinguishable from the present case.

In *RWS Bldg. Co. v. Freeman*, No. 04CA40, 2005 WL 3446320 (Ohio Ct. App. Nov. 23, 2005), a general contractor sued a roofing subcontractor and its president for breach of contract predicated on the subcontractor's failure pay its suppliers and keep the project free of liens, and fraud predicated on providing false lien waivers misrepresenting the company's financial condition to collect payments, as well as violation of a state law that prohibits an officer, director, employee or agent of a corporation from making any false or misleading statements. The trial court entered summary judgment in the plaintiff's favor, which was affirmed on appeal.

---

[1] Although the debtors listed this debt on their bankruptcy schedules, they included the notation that it was a corporate debt and was listed for notice purposes only. *See* Schedule E/F at 44 (Fil. No. 9).

Similarly, in *GT Contracting Corp. v. Ogden (In re Ogden)*, Case No. 14–00286–5–DMW, Adversary Proceeding No. 14–00005–5–DMW, 2015 WL 9412746 (Bankr. E.D.N.C. Dec. 21, 2015), a subcontractor obtained a state-court default judgment against a contractor and its chief executive officer and majority shareholder who had not paid the subcontractor for its work. The default judgment was based on a state statute requiring any moneys paid to contractors on a project to be held in trust by the contractor for the subcontractors who actually performed the work. The statute specifically provides that any officer, director, or managing agent of a contractor or subcontractor who has direction over or control of money held in trust by a contractor or subcontractor is a trustee.

When Ogden, the chief executive, filed a Chapter 7 bankruptcy petition, the subcontractor filed an adversary proceeding to except the debt represented by the state-court judgment from discharge under § 523(a)(4) for defalcation by a fiduciary. The bankruptcy court granted summary judgment to the plaintiff, giving preclusive effect to the state court's default judgment because it established all of the elements required by § 523(a)(4).

Both of these cases involved state laws explicitly holding officers and agents of contractors liable for making false statements or violating fiduciary responsibilities. There is no evidence before this court that the Buchanans have been accused of or held responsible for violating a similar law.

To preclude summary judgment, Lund-Ross does point to some factual disputes in the evidence. One such dispute concerns Jay Buchanan's statements that (1) after bidding on the projects but before securing the contracts, he advised Lund-Ross's president that Signature's financial situation left it unable to obtain a bond, and (2) he regularly communicated with Lund-Ross's controller about Signature's financial difficulties and urgent need for prompt payment from Lund-Ross in order to pay suppliers, labor, insurance, etc. Lund-Ross's president denies that Buchanan said anything about Signature's financial condition but simply indicated it had reached the limits of its bonding capacity. Similarly, Lund-Ross's controller denies that Signature's financial condition or immediate need for cash was ever a topic of discussion in her conversations with Buchanan.

Likewise, Lund-Ross's president directs the court's attention to the lien waivers signed by Jay Buchanan on behalf of Signature in connection with pay applications for the various projects to support the plaintiff's argument that Buchanan warranted that Signature's subcontractors and materialmen had been paid in full. However, it is clear from the face of those lien waivers that Buchanan signed the documents as general manager and partner of Signature Electric, LLC, dba D & J Electric. The notary affidavit confirms that Signature executed the lien waiver through Buchanan.

Under the circumstances, these factual disputes are not material. "A material fact is one that 'might affect the outcome[.]'" *Doe v. Univ. of St. Thomas*, 972 F.3d 1014, 1016 (8th Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The plaintiff here has not established that the debtors are liable on an enforceable obligation under applicable law, which is the first element of § 523(a)(2)(A). This court has already held that the debt is owed by Signature, not the Buchanans personally. While the plaintiff claims Jay Buchanan knowingly and

intentionally made fraudulent representations that proximately caused it damage, the plaintiff has not demonstrated how the Buchanans can be held personally liable for their business's debts. Therefore, the remaining elements of § 523(a)(2)(A) need not be discussed.

## V. Conclusion

The plaintiff has not shown that the debtors owe a debt to Lund-Ross, so the debtors' motion for summary judgment will be granted and the complaint seeking to except the alleged debt from discharge under § 523(a)(2)(A) will be dismissed.

IT IS ORDERED: The defendants' motion for summary judgment (Fil. No. 24) is granted. Separate judgment will be entered.

DATED: November 12, 2020

BY THE COURT:

/s/Thomas L. Saladino
Chief United States Bankruptcy Judge

Notice given by the Court to:
 *Scott E. Daniel
 Justin D. Eichmann
 United States Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.